First National Bank of Marion *v.* Adams School Township, et al.

[No. 2,145.   Filed April 8, 1897,]

Complaint.—*School Supplies.—Averment as to Necessity Of.*—Where a complaint against a school township to recover for supplies sold to the trustee thereof shows on its face that the supplies purchased and delivered to the township are wholly unauthorized by law, such complaint cannot be made good by an averment that such supplies were useful and necessary for the thorough organization and efficient management of such schools.  *p. 382.*

Township Trustee.—*Not Authorized to Purchase "Reading Circle Books" for use of Pupils.*—A township trustee has no authority to purchase on account of his township "reading circle books" for the

individual use of pupils, even though such books were useful and necessary; as they have no place in or connection with the schools within the meaning and provisions of the law.   *pp. 381–385.*

From the Madison Superior Court.  *Affirmed.*

*C. L. Henry, E. B. McMahon* and *J. A. Van Osdol,* for appellant.

*F. A. Walker* and *F. P. Foster,* for appellee.

WILEY, J.—The appellee, George M. Ray, sold to his co-appellee, Adams School Township, through its trustee, five hundred "reading circle books," at one dollar each.  September 21,1894, the trustee issued to said Ray a township warrant or order for five hundred dollars in payment for such books, which order matured June 15, 1895, bearing 8 per cent. interest from date.  Soon after the issuing of said township warrant, and before its maturity, said Ray transferred it by delivery to the appellant.

The complaint is in two paragraphs, the first of which counts upon the warrant, while the second wholly ignores the warrant and is based upon the *quantum meruit,* as for goods sold and delivered.  In the second paragraph of the complaint it is averred that "on the 27th day of September, 1894, the said George M. Ray sold and transferred to this plaintiff all of his right, title and interest in his account and demands against said school township on account of the goods and supplies so furnished said school township."

Each paragraph of the complaint contains the following averment: "That said books so purchased by said Adams School Township were for the use of said school township and were useful, suitable and necessary, and for the benefit and use of the schools of defendant township, and were reasonably worth the

sum of five hundred dollars; * * * that the same were necessary for the thorough organization and efficient management of the schools of said defendant township, and were such as said school township, through its trustee, was authorized to purchase; that the same were delivered to the defendant township for use in the schools of said township."

The second paragraph of the complaint contains the additional averment that said books were "accepted by said school township and have ever since been in use in the schools of said township."

The appellee, Adams School Township, challenged the sufficiency of each paragraph of the complaint, by a demurrer, which the court sustained, and the appellant refusing to plead over, judgment was rendered against it for costs.

The correctness of this ruling of the court upon the demurrer, the appellant questions by its first and second assignments of error.

In determining the liability of the appellee township under the facts alleged, we must look to the statutes defining the powers and authority conferred upon township trustees in the management of the schools, to bind their townships for the supplies mentioned and described in the complaint.

The office of township trustee is wholly a statutory one, and the rule prevails that such trustee has no power to act, or authority to bind his township that is not delegated to him by statute. His authority will not be extended, nor his powers enlarged, either by intendment or by any strained construction of the statute. If he is authorized by statute to purchase the books described in the complaint, and they were useful and necessary for the organization, management and conduct of the schools, then the township is liable, and must respond in damages; but if he had no

authority to purchase them, his contract with the appellee, Ray, was absolutely void, and cannot be enforced against the appellee township, notwithstanding the fact that the action is prosecuted by an innocent purchaser of the order or warrant.

Appellant relies upon section 5920, Burns' R. S. 1894 (4444, R. S. 1881), in support of its contention that the appellee township is liable upon the facts averred in its complaint. That section is as follows: "The trustees shall take charge of the educational affairs of their respective townships, towns, and cities. They shall employ teachers; establish and locate, conveniently, a sufficient number of schools for the education of the white children therein; and build, or otherwise provide, suitable houses, furniture, apparatus and other articles and educational appliances necessary for the thorough organization and efficient management of said schools," etc.

Under the provisions of this statute appellant insists that it is as much within the province of the school trustee to buy suitable apparatus, appliances and articles necessary for the thorough organization and efficient management of the school, as it is to provide schoolhouses and employ teachers. With this insistence we heartily concur. But we cannot hold that the statute makes the trustee the sole judge or arbiter as to what are suitable apparatus and other articles and educational appliances necessary for the thorough organization and efficient management of the schools. To so hold would be to confer upon such trustee unlimited power and authority in such matters, and this would be a dangerous rule, and in all probability, in many instances, lead to grave results and serious complications. We are quite clear that the legislature never intended to confer such authority upon school trustees.

Appellant contends that the provisions of section 5925, Burns' R. S. 1894 (4446; R. S. 1881), which authorizes two or more school trustees, in distinct municipal corporations, to establish graded schools, to purchase suitable grounds and erect buildings thereon, is no broader in defining the powers of school trustees than section 5920, *supra*, and grounds its contention on the case of *Craig School Tp.* v. *Scott*, 124 Ind. 72, in which it was held that it makes the trustees the sole judges of the propriety and advisability of establishing such graded schools and of purchasing real estate for that purpose.

In that case, the court, speaking by Olds, J., said: "This section of the statute contemplates and authorizes the trustees of two or more school townships to join together and to purchase real estate suitable for graded school purposes, and to establish graded schools. It makes the trustees the judges of the propriety and advisability of establishing such graded schools and of purchasing real estate for that purpose."

We do not think that these two sections of the statute are at all analogous. The former, in general terms, defines the authority, duty and power of trustees, while the latter, in express terms, empowers the trustees jointly to establish joint graded schools, to purchase suitable real estate and erect buildings thereon, and hence the case of *Craig School Tp.* v. *Scott*, *supra*, is not in point.

Townships are involuntary political or civil divisions of the State, and are created by general laws to aid in the administration of the general State government. The township trustee is *ex officio* school trustee of his township, and his powers are limited, being created and defined by statute. For an act done by such school trustee not within the scope of his statu-

tory power, and where he has no authority to act at all, his township is not liable. *Board, etc., v. Fertich*, 18 Ind. App. 1; *Snoddy v. Wabash School Tp., ante,* 284; *Board, etc., v. Allman,* 142 Ind. 573; *State, ex rel., v. Hart,* 144 Ind. 107; *Board, etc., v. Hemphill,* 14 Ind. App. 219.

A school trustee, like the board of county commissioners, whose duties are defined and circumscribed by statute, cannot do any act which is not either expressly or impliedly authorized by statute. *Board, etc., v. Fertich, supra; Gavin v. Board, etc.,* 104 Ind. 201; *Board, etc., v. Barnes,* 123 Ind. 403.

The rule is well settled in this State that persons contracting with school trustees are bound to know that their powers to contract are limited by statute, and that beyond such limit they cannot go and bind their townships.

In *Bloomington School Tp.* v. *The National School Furniture Company,* 107 Ind. 43, the court, speaking by Howk, C. J., said:

"In the execution of the written contract, which is made the basis of the complaint in this case, appellee was affected with notice of the limited powers of appellant's trustee, under our laws. Such trustee does not and cannot act as the agent merely of his township. He is a public officer, and his relations to his township, as the name of his office clearly imports, are all of a fiduciary nature. In dealing with such trustee, all persons are bound to take notice of his official and fiduciary character, and to know that he can only bind his township by his contracts, verbal or written, when it appears, or is shown by proper averment and proof, that such contracts are authorized by law."

In *Honey Creek School Tp.* v. *Barnes,* 119 Ind. 213, the court, speaking by Olds, J., said: "School townships are corporations with limited statutory powers,

and all who deal with a trustee of a school township are charged with notice of the scope of his authority, and that he can bind his township only by such contracts as are authorized by law." See, also, *Reeve School Tp.* v. *Dodson*, 98 Ind. 497; *Union School Tp.* v. *Bank, etc.*, 102 Ind. 464; *Pine Civil Tp.* v. *Huber Mfg. Co.*, 83 Ind. 121; *Axt* v. *Jackson School Tp.*, 90 Ind. 101.

It has been expressly held that a township trustee has no authority to purchase on account of his township the ordinary, usual and general text-books used by pupils in the schools. *Honey Creek School Tp.* v. *Barnes et al., supra.*

Under the holding in this case, a school trustee is inhibited from purchasing for the individual pupils the general text-books provided by statute and used in the schools, and yet we know that such books are suitable and necessary, etc.

There is no law in this State which even contemplates that trustees are clothed with such power, except the act approved March 8, 1897, which provides for compulsory education under certain conditions, which act is not yet effective, and then the school trustees are only authorized to purchase such necessary text-books for the use of indigent and poor children.

The case last cited and the principle therein announced, it seems to us, are controlling here, for the reason that books for a "reading circle" are of necessity for the individual use of pupils, and this fact being apparent upon the face of the complaint, and in the very nature of the relations existing between the schools and the "reading circles" contemplated, takes it out of the rule as announced in many cases in this State, that a complaint will be held good where it is averred that the supplies, apparatus, etc., furnished

and delivered to a school township were useful and necessary and were for the use and benefit of such schools and the further averment that they were necessary for the thorough organization and efficient management thereof.

If a complaint on its face, as in the case at bar, shows that the supplies purchased by and delivered to the township, are wholly unauthorized by law, such complaint cannot be made good by averment that such books, etc., "were useful and necessary for the thorough organization and efficient management of such schools."

The court takes judicial knowledge of the constitution and laws of the State, and hence we judicially know that there is no provision in either the constitution or the statutory law, for the organization, control and management of "reading circles" as a part and parcel of, or in connection with the educational system of the commonwealth. Our public school system finds its foundation in the constitution and it has progressed and been fostered and protected by legislation, until it has reached a prominence and perfection which is the common pride of all, and the encouraging hope of the future. It has not only a place in the constitution and laws of the State, but it is firmly enshrined in the hearts of her people. The entire government, management and control of the public schools is regulated by statute. The course of study, the branches to be taught, and even the qualifications of teachers are the subject of legislative enactment. We find no statute which authorizes, directs or permits that organized "reading circles" are a part and parcel of the system, and the law cannot be so construed that the revenues collected by taxation, or otherwise, with which to support and maintain the schools, can be diverted into different channels, and

thus be dissipated in the purchase of "reading circle books."

The court takes knowledge of the current, and common history of the State, and, hence, we know that in 1887, the Indiana Teachers' Association, organized a "Young People's Reading Circle," the object of which was to select and put into the hands of young people, books of high character and morals, to the end that vicious tastes and habits might be thwarted by the positive influence of good that would follow such a course.   We know, also, that these reading circles have, in many instances, been organized in connection with the public schools, not as a part of the schools, but wholly independent, and great good has resulted therefrom.   We further know, as a part of the common history of the State, that the management and control of such "reading circles" is under, directed, and supervised by many of the best and most renowned educators of the land; that the books for use therein are selected with great care by a committee chosen for that purpose, and that the most wholesome results have followed these labors; but we cannot extend either by intendment or construction, the plain provisions of the statute, so that every designing sharper, shrewd manipulator and bold and unscrupulous speculator, shall constitute himself a special committee to select the literature for the young people of our State; to call such selection "reading circle books;" to go in and out among the unwary, but honest, trustees, and say to them that such books as selected by them, are necessary for the thorough organization and efficient management of the schools, and thus induce such trustees, out of the public funds, to purchase them, even at any price.

The history of the past, the progress made by our schools, common judgment, and the plain provisions of the statute itself, teach us that a "reading circle"

library as contemplated by the averments of the complaint, and the books as furnished by the appellee, George M. Ray, is and are not necessary for the thorough organization and efficient management of the common schools.

The proposition that a school trustee has unlimited authority to purchase books for a "reading circle," and that he is the sole judge of their merits and adaptability to the mind of the youth of the land, and of their necessity and benefit to the schools, is too preposterous for argument. If that were true, then he could purchase all the light, trashy and immoral literature of the age; he could select the life of Jesse James as an eminently fit book for young men and youths of the State, and could bind his school township to pay for such books, by simply averring that they were "reading circle books," were useful and essential, and necessary for the management and efficient control of the schools.

Courts will not lend themselves to such vagaries, and thus aid in prostituting the public school system from its lofty and noble purposes, or poisoning the minds of the youth of the land by aiding in putting into their hands this character of literature.

The case in hand is not strengthened by the averment in the complaint that the goods so furnished were such as said school township had a right to purchase, for it affirmatively appears on the face of the complaint, that it had no right whatever to purchase them.

We do not lose sight of the fact that in construing section 5920, *supra,* it has been held that a township trustee may purchase for his schools blackboards, maps, charts, tellurians, dictionaries, books of reference, manikins, etc., but, as was said in *Honey Creek School Tp.* v. *Barnes, supra,* it is going to the very border-line of construction so to hold.

Such purchases were upheld on the sole ground that they were books, maps, etc., of reference, and were to be used in common by all the pupils of the schools. In the case last cited, the court, speaking by Olds, J., said: "Blackboards, charts, maps, tellurians and dictionaries are a class of articles, apparatus and books which are not required for each individual scholar, but one of each would be sufficient, in most instances for the whole school, and could be used by the teacher in giving instructions to the pupils. No person being required to furnish such common property for the benefit of the whole school, they can only be supplied by the trustees."

The appellant has not, by the averments of its complaint, brought itself within the rule established by the decided cases. We are not advised by any averment in the complaint as to the character of the books that were purchased, and it is not sufficient to say that they were useful and necessary and that they were such books as the township was authorized to purchase, for they have no place in, or connection with the schools, within the meaning and provisions of the law.

A school trustee has no official connection with the "Young People's Reading Circle," and is not charged with any duty in relation thereto, and the purchase of the books described in the complaint by appellee township's trustee, for such "reading circle," even though it be under the guise that they were for the use and benefit of the schools, cannot be sustained by the law, nor upheld by the courts.

There was no error in sustaining appellee township's demurrer to the complaint.

The judgment is affirmed.

BLACK, COMSTOCK and ROBINSON, JJ. We concur in the conclusion reached.