## BOARD OF COMMISSIONERS OF MONROE COUNTY
## v. GALLOWAY.

[No. 2,220.   Filed June 2, 1897.]

TOWNSHIP TRUSTEE.—*When May Bind County for Medical Aid to Poor.*—A township trustee as overseer of the poor has power to bind the county for medical aid for a poor person of his township, where the physician employed by the county has abandoned his contract. *p. 693.*

SAME.—*Employment of Physician for Poor.*—A township trustee as overseer of the poor has no authority to bind the county by his contract in the employment of a physician to attend the poor where the county has already made provisions therefor.   *p. 695.*

SAME.—*Employment of Physician for Poor.—Agent for the County.*—A township trustee in the employment of a physician for the poor is the agent of the county, and can only bind the county while he acts within the scope of his authority as prescribed by statute.   *p. 698.*

From the Monroe Circuit Court. *Reversed.*

*R. A. Fulk* and *Edwin Corr*, for appellant.

*J. R. East* and *R. G. Miller*, for appellee.

WILEY, C. J.—Appellee was a licensed practising physician and surgeon, and sued appellant for services rendered a poor person, the services being rendered under the employment of the township trustee. The complaint avers that on the 13th day of December, 1894, appellee was employed by one Wylie Robinson, trustee of Washington township, in Monroe county, to attend professionally one Nancy Goble, who was then a poor person, residing in said township, and who was wholly unable to care for herself; that said Goble was seriously ill, and that she required the immediate attendance and care of a physician; that at the time of said employment said trustee did not know that the board of commissioners had employed a physician to attend and wait upon the poor of said township; that appellee continued to wait upon and visit said Goble until March 3, 1895, and during all of said time he had no knowledge that the board of commissioners had employed a physician to attend the poor of said township; that his services were reasonably worth $54.00, and that he filed a claim for said amount before the board of commissioners, which they refused to pay, and wholly disallowed. The complaint further avers that prior to December 1, 1894, the said board of commissioners contracted "privately" with one Dr. Canada, a licensed physician of said county, to attend upon the poor of said township, but that said employment did not come to the knowledge of the appellee or said trustee until March 3, 1895; that in making said contract with said Canada there was no notice given thereof, and no record made of the same, and no contract recorded; and that said Canada did not notify said trustee of said employment, and that he did not wait upon the poor of said township; that during the time appellee was performing the services named, the said Canada lived within three miles of said Goble,

Board of Commissioners of Monroe County v. Galloway.

and that during all of said time did not in any manner notify said trustee or appellee, and that said trustee could not, by the use of reasonable care, have known of such employment, and that during the time appellee was waiting upon said Goble, said Canada wholly abandoned his said contract.

Appellant demurred to the complaint for want of sufficient facts, which demurrer was overruled. The cause was tried by the court upon the general issue, and at the request of the appellant the court made a special finding of facts, and stated its conclusion of law thereon.

The essential and controlling facts, as found by the court, are as follows: That appellee was a licensed and practising physician and surgeon; that from December 14, 1894, until March 3, 1895, James W. Robinson was trustee of Washington township, Monroe county, and that he was overseer of the poor of said township; that on June 16, 1894, the board of commissioners of said county contracted with James L. Canada, a licensed and skillful physician and surgeon, to attend and wait upon the poor of said township for one year, and that said Canada was, during all of said time, ready and willing to render medical attention to the poor of said township; that one Nancy Goble, a poor person residing in said township, was a charge thereon from December 13, 1894, to March 3, 1895; that on December 13, 1894, said Goble was dangerously ill and needed immediate medical attention; that said Robinson, being informed of said illness, employed appellee to furnish her medical attention as a poor person; that in pursuance to said employment appellee waited upon her professionally from December 13, 1894, to March 3, 1895, and that his services were reasonably worth $54.00, and that no part thereof has been paid; that prior to the commencement of this action appel-

lee filed his claim for his services before the board of commissioners, but that said claim was rejected and disallowed; that at the time said trustee employed appellee, as aforesaid, he had no knowledge of the employment of said Canada, as aforesaid, and did not learn said fact until March 3, 1895; that appellee did not know of the employment of said Canada and did not learn thereof until March 3, 1895; that appellee lived about seven miles from said Goble, and that before the appellee was employed the husband of said Goble called upon and requested said trustee to furnish a physician to wait upon his said wife; that one Dr. Presley, who had been attending her, had abandoned the case; and thereupon said trustee gave said husband a written request and employment to be delivered to the appellee, and that the same was delivered to him; that at said time said trustee resided about eight miles from said Goble, and that said Canada resided about two miles from said trustee, and two and a half miles from the residence of said Goble. It is further found that at the June term, 1894, of said board of commissioners, the said Canada filed a bid to attend to all pauper practice in said township for one year for $45.00, and that said board then and there made an order accepting said bid, and directed said Canada to enter into a contract to perform the services under said bid; that June 16, 1894, said Canada entered into a written contract to perform the services, with said board, but this written contract was never recorded in the order book of said court, but was filed among the "contracts and files of the auditor's office;" and that no notice was given said Robinson nor the appellee until March 3, 1895. The court also found that at the time appellee was employed, the services of said Canada could have been as readily

procured, and that he resided nearer said Goble than appellee.

Upon the facts thus found, the court stated its conclusion of law, that appellee was entitled to a judgment against appellant for $54.00, and to the conclusion of law as stated by the court, appellant at the time excepted, and judgment was rendered against it for the amount.

Appellant has assigned errors as follows: First, the court erred in overruling its demurrer to the complaint, and, second, the court erred in its conclusion of law.

The first specification of error is not well taken. The complaint, among other things, averred that Dr. Canada, who had been employed by the board of commissioners to wait upon the poor of Washington township, had abandoned his contract with the appellant. Treating much of the complaint as surplusage, the allegation to which we have just referred, in our judgment, makes the complaint good.

A township trustee is, by law, made the overseer of the poor of his township, and if Dr. Canada had abandoned his contract with the appellant (and the demurrer admits that he had), then there was no physician in said township whose duty it was to wait upon the poor, and in that event it was the duty of the trustee to furnish medical aid to the poor of his township in all instances within the provisions of the law.

But, from the view we take of the law, which must control, it is unnecessary to extend this opinion as to the sufficiency of the complaint.

The law, applied to the facts as found by the court, in our judgment, relieved the appellant from liability.

By section 8069, Burns' R. S. 1894 (5994, Horner's R. S. 1896), the township trustee is made the overseer of the poor of his township, but by its terms no ex-

press authority is conferred upon him to employ medical aid for such poor persons.

Section 8142, Burns' R. S. 1894 (6066, Horner's R. S. 1896), is as follows: "Township trustees of the several civil townships of this state shall be the 'overseers of the poor' within their respective townships, and shall perform all the duties with reference to the poor of their respective townships that may be prescribed by law."

Section 8147, Burns' R. S. 1894 (6071, Horner's R. S. 1896), is as follows: "The overseer of the poor in each township shall have the oversight and care of all poor persons in his township so long as they remain a county charge, and shall see that they are properly relieved and taken care of in the manner required by law."

Section 7851, Burns' R. S. 1894 (5764, Horner's R. S. 1896), is as follows: "It is hereby specially made the duty of such board [commissioners] to contract with one or more skillful physicians, having knowledge of surgery, to attend upon all prisoners confined in jail, or paupers in the county asylum, and may also contract with physicians to attend upon the poor generally in the county; and no claim of a physician or surgeon, for such services, shall be allowed by such board except in pursuance of the terms of such contract: provided, that this section shall not be so construed as to prevent the overseers of the poor, or any one of them, in townships not otherwise provided for, from employing such medical or surgical services as paupers within his or their jurisdiction may require."

We must look to and construe all these provisions together to ascertain their full import and the power conferred by them upon public officers to bind the county thereunder.

It seems to us that a township trustee, by virtue of these statutes, has no authority as overseer of the poor to bind the county by his contracts in the employment of a physician to attend the poor where the county has already made provision therefor. This is the established rule as settled by the uniform decisions in this State.

In *Board, etc.*, v. *Boynton*, 30 Ind. 359, it was held that, under these provisions of the law, the trustee has no power to employ physicians, except in the event that the commissioners fail to do so.

This rule was quoted approvingly in *Board, etc.*, v. *Hon*, 87 Ind. 356, and in that case the Supreme Court, speaking by Woods, C. J., said: "Outside of these provisions there can be no liability of the county for the services of physicians or surgeons." If the county board failed to employ a physician for the poor of the township, the power of the trustee arises and it is his duty to act when a necessity occurs. Under such circumstances his decision in respect to a matter within his discretion, and within the statutes is conclusive. But he cannot, by assuming power, acquire it.

It has been held, that where provision had been made by the county board for medical and surgical aid for the poor of the township, and the physician thus contracted with refused to act, and another physician rendered services without employment from the trustee, the county was not liable, though there was an emergency for such action. *Morgan County* v. *Seaton*, 122 Ind. 521.

In the last case cited the Supreme Court, speaking by Mitchell, C. J., said: "While it is true that it is made the duty of every county in the State to relieve and support the poor and indigent, the method by which support and relief are to be administered is dis-

tinctly pointed out by law. * * * The law imposes the duty of determining who are poor persons, entitled to relief, primarily upon the township trustee, acting as overseer of the poor. * * * The benefactions of the State are to be dispensed in pursuance of a carefully devised plan, which is to be executed by officers designated by the law."

Referring to section 7851, *supra*, the court, in the same case, says: "As will be seen, this section in terms prohibits the board of commissioners from allowing any claim of a physician for services, except in performance of a contract of employment, therein authorized to be made, and it has been uniformly held that the overseer of the poor has power to employ a physician only in the event the board of commissioners fail to make suitable provision for attendance upon the poor by contract."

The case of *Woodruff* v. *Board, etc.*, 10 Ind. App. 179, is very similar to the case now under consideration. In that case the appellant was employed by a township trustee to wait upon a poor person. He performed the services required by the employment and sued the county therefor. The appellee answered, setting up a contract between it and certain skillful and competent physicians and surgeons to wait upon the poor of that township, and that such physicians were accessible, and ready and able to perform all necessary medical and surgical services for the poor of such township. This court, speaking by Lotz, C. J., said: "It fully appears, from the averments of the answer, that ample provision had been made for the poor of Perry township. This being true, the trustee had no power to make a contract with the appellant binding upon the county."

It is true, that where a physician has been regularly employed by the board of commissioners to wait

upon the poor, but he is not accessible, and an emergency arises, or in case he should refuse to act or abandon his contract, the trustee of the township may employ a physician, in case of urgent necessity, to treat a poor person in need of medical or surgical aid, and in the absence of fraud the county will be bound by his judgment and contracts, and held liable for such services. *Board, etc.,* v. *Seaton,* 90 Ind. 158; *Washburn* v. *Board, etc.,* 104 Ind. 321.

The power vested by statute in the board of commissioners to employ medical and surgical aid for the poor of a township or the county, and where there has been an exercise of that power, and suitable provision has been made, it divests the township trustee of power to act, and he has no authority to employ medical aid for the poor of his township, unless the physician employed by the county abandons his contract, or refuses to perform it, or is at such a distance that his attendance cannot be readily procured, or an emergency exists, or he lacks the skill and experience necessary to render reasonably efficient services in the case, and the dictates of humanity seem to require immediate action upon the part of the trustee. *Board, etc.,* v. *Osburn,* 4 Ind. App. 590.

In line with the authorities in Indiana is the case of *Goodrich* v. *City of Waterville,* 88 Me. 39. Under a statute in that state, cities and towns are authorized to elect a physician to wait upon the poor, and in construing that law the Supreme Court said: "When a town or a city has already provided for the medical treatment of its sick paupers, by the election of a town or city physician, and he is ready and willing and competent to attend a sick pauper, so that no necessity exists for employing any other, it is undoubtedly the duty of the overseers of the poor to call him, when one of the paupers under their care is sick and in need

of medical treatment." It is also held in that case that where another physician is called he is chargeable with notice that he will have no right to call upon the town or city to compensate him for his services.

A township trustee in the employment of a physician for the poor of his township is the agent of the county, and can only bind the county while he acts within the scope of his authority. That authority is fixed by law and his duties are circumscribed by statute. His agency, therefore, is of such a character that all are bound to take notice of its scope and limitations.

Where a trustee does not act within the scope of his statutory power, and where he has no authority to act at all, he can neither bind his township nor the county. In dealing with a township trustee, all persons are bound to take notice of his official and fiduciary character, and are also bound to know that he can only bind his township or the county for which he acts, while such acts are authorized by law. See *First Nat. Bank* v. *Adams School Tp., ante,* 375, and cases there cited.

In *Board, etc.,* v. *Fertich,* 18 Ind. App. 1, this court, speaking by Black, J., said: "Counties are involuntary political or civil divisions of the State, created by general laws, to aid in the administration of the State government. The powers of the board of county commissioners are limited, being created and defined by statute. For an act done by such board not within the scope of its statutory powers, the county is not liable. * * * The board cannot do any act which is not either expressly or impliedly authorized by statute. * * * Where the mode of exercising a power by the board is prescribed by statute, that mode must be pursued. * * * All persons who deal with the board must recognize the limits of its powers, and are bound to take

notice that it cannot bind the county by any action not within its statutory authority." These principles are alike applicable to a township trustee, and further citation of authority is unnecessary to support them.

Other questions are raised by the record and discussed by counsel, but from the authorities cited, and what we have said, make it unnecessary to decide them. From the averments of the complaint and the facts found by the court, there was no apparent necessity or urgent emergency for the appellee's employment to wait upon Mrs. Goble, while Dr. Canada, the regularly employed physician under a contract with the board of commissioners, was accessible, competent and ready and willing to act.

The appellee, as shown by the authorities cited, being chargeable with notice, that under these facts and circumstances he would have no right to call upon the county to compensate him for his services, has no right of action against the county.

It follows, therefore, from what we have said that the court erred in its conclusion of law, and the judgment is reversed, with instructions to the court below to restate its conclusion of law and render judgment for appellant.