WROUGHT IRON BRIDGE COMPANY *v.* THE BOARD. OF COMMISSIONERS OF HENDRICKS COUNTY ET AL.

[No. 2,191.   Filed January 5, 1898.   Rehearing denied April 5, 1898.]

COUNTY COMMISSIONERS.—*Joint Session.—Notice of Meeting.*—It is not provided by statute how notice shall be given to convene boards of commissioners of adjoining counties in joint session, but it will be presumed where such boards met that some kind of notice was given.  *pp. 674, 675.*

BRIDGES.—*Construction of on County Lines.—Power of County Commissioners.*—Boards of county commissioners have no powers to construct bridges across a stream on the boundary line between counties except such as are expressly or impliedly granted by statute, and contracts entered into with boards of commissioners of adjoining counties for the construction of such bridges which are not in substantial compliance with the statute providing therefor, are void.  *pp. 675, 676.*

SAME.—*Construction of on County Line.—Void Contract.—Recovery.—Quantum Meruit.*—Where boards of county commissioners of adjoining counties have failed to comply with the statute in the construction of a bridge across a stream on the boundary line of such counties, the contractor cannot recover on the *quantum meruit* for the construction thereof, although the counties accepted the bridge, and the same was used by the citizens thereof.  *pp. 676-679.*

From the Marion Circuit Court.  *Affirmed.*

*Daniel Wait Howe*, for appellant.

*Cash C. Hadley, Thomas J. Cofer* and *W. R. Harrison*, for appellees.

ROBINSON, C. J.—Appellant sued appellees for a balance due·for the erection of a bridge.  The first paragraph of the complaint is based upon the theory that the bridge is built across a stream forming the boundary line between Hendricks and Morgan counties, and that the bridge was built pursuant to the act regulating the building of county line bridges.  The second paragraph proceeds upon the theory that the stream over which the bridge was built crossed the boundary line between the two counties at right

angles and that the bridge was built under the power incident to that vested in the two counties to construct highways along county boundary lines. The third paragraph is in assumpsit for work and materials done and furnished. A demurrer for want of facts by the Hendricks county board to the first paragraph of the complaint was sustained. Upon issues joined judgment was rendered in appellees' favor over appellant's motion for a new trial.

The questions presented by this appeal are whether there was a substantial compliance by the boards of the two counties with the statute providing for the building of bridges across streams forming boundary lines, and whether in such a case upon failure to comply with the statute, there may be a recovery on a *quantum meruit* for benefits accepted and used by the two counties. The power to build bridges is not incident to the power to establish highways. Complete provision is made by statute for building bridges whether they are wholly within one county or across boundary lines.

The original statute on the subject of building bridges on county boundaries went into force May 14, 1869 (Acts 1869, Sp. Sess., p. 27). It included what are now sections 3251 to 3255, Burns' R. S. 1894, (2880-2884, Horner's R. S. 1897). Section 3251, *supra*, provides that "Whenever public convenience shall require the erection or repair of any bridge across any stream forming the boundary line between two counties within this state, upon application therefor to the board of county commissioners of either county, such board of county commissioners may, if they think it expedient, declare their willingness to aid in the erection or repair of such bridge by resolution or order, and shall cause notice thereof to be given to the board

of county commissioners of the other county inter-ested therein. And whenever it may be ascertained that the board of county commissioners of both counties have made such order or resolution, such board of county commissioners shall, by concurrent resolution, cause a survey and estimate to be made, sub-mitting plans and specifications therewith, by some competent person, to be presented to their respective boards of county commissioners at some specified time and place at or near the site of such contemplated bridge, when such boards of county commissioners shall meet in joint session to estimate and determine the kind of bridge which shall be erected, and the manner and time when payments shall be made for the erection or repair of such bridge." The above section was amended in 1881 by adding a proviso which is not in question in the case at bar. By sections 3252, 3253, 3254, and 3255, it is made the duty of the boards while in joint session to appoint one or more superintendents who are, under the regulations of the two boards, to have full control and supervision of the erection or repair of such bridge; making it the duty of the boards when in joint session to make such appropriation for their respective counties as will make an equitable proportion to each county of the whole cost of construction or repair of such bridge in proportion to the taxable property of the counties, and providing that each county shall be the owner of an interest in such bridge.

It is argued by counsel for appellee that the pleading fails to show that any order or resolution was made or notice thereof given; that any plans or specifications were made and submitted to the boards and bids received thereon except the plans and specifications submitted by the different bridge companies with their bids; that any superintendent was ap-

pointed or any appropriation was made for the construction of the bridge. The notice contemplated is a notice by the board taking the initiatory steps to the board of the other county, and the purpose of such notice would be to convene the boards in joint session. It is not provided how or in what manner this notice shall be given, and as the two boards did meet in joint session it will be presumed that some kind of notice was given. See *Board, etc.,* v. *Board, etc.,* 128 Ind. 295.

The boards of commissioners of the two counties had the power to build a bridge across a stream on the boundary line between the two counties. They had this power only by virtue of a statute prescribing the manner in which action should be taken in the matter. It is not claimed by appellant that the method prescribed by the statute was followed, but that one equally as good was adopted, and that there was a substantial compliance with the statute. When the two boards attempted to contract for the construction of the bridge, they were exercising a naked statutory authority, and they had no other powers in the matter except such as are expressly or impliedly granted by the statute. *McCaslin* v. *State, ex rel.,* 99 Ind. 428; *Brown* v. *Ogg,* 85 Ind. 234; *Arnold* v. *Gaff,* 58 Ind. 543; *Key* v. *Ostrander,* 29 Ind. 1; *Williamson* v. *Doe,* 7 Blackf. 12; *Board, etc.,* v. *Templeton,* 51 Ind. 266.

In the case of *Board, etc.,* v. *Gillies,* 138 Ind. 667, the board entered into a contract for the purchase of stationery for the county, without having complied with the statute requiring that the board should receive statements of the county officers of the probable amount of stationery necessary, the notice to bidders, and the reception and examination of bids. In holding the contract void the court said: "The state-

ments by the officers, the notice to bidders, and the reception and examination of the bids, are the essence of the law.   If these are disregarded as being merely directory, the statute disappears.   The statutes of the State are not to be wiped out in that manner.   Boards of county commissioners are themselves but the creatures of the legislature, and they must pursue and exercise their powers in strict compliance with the letter and spirit of the statute.   It is theirs to obey, not to disregard the commands of the law making power of the State."   In the case at bar it cannot be claimed that the two boards complied with the spirit or the letter of the statute.   All they did was to meet in joint session, determine the kind of a bridge they would build and let a joint contract for its construction.   The appellant's right to recover on the contract rested upon a substantial compliance with the provisions of the statute.

It is a well settled rule that where a statute prescribes the manner of exercising a power, the manner prescribed must be adopted.   1 Dillon Mun. Corp. section 449; *Platter* v. *Board, etc.*, 103 Ind. 360; *Leonard* v. *American Insurance Co.*, 97 Ind. 299.

It is argued that the first paragraph of complaint is good upon the ground that it shows full performance by appellant of its  contract with the boards; that the bridge had been accepted by them, and used by the citizens of both counties ever since its completion and that it was fairly and reasonably worth the sum stated as the contract price.   Appellants' counsel insists that after the contract has been fully performed and the counties have fully ratified it by accepting and retaining the benefits of it, they cannot be heard to say that the contract is null and void, and cites the case of the *State  Board, etc.*, v. *Citizens' Street R.W. Co.*, 47 Ind. 407.   But the doc-

trine declared in that case has been distinguished from that applicable to municipal corporations. In the case of *Driftwood Valley Turnpike Co.* v. *Board, etc.*, 72 Ind. 226, the court, in speaking of the case of *State Board, etc.*, v. *Citizens' Street R. W. Co., supra*, said: "That, however, was the case of a private corporation, the street railway company, that sought to avoid its obligation on the ground of want of power to make the contract. There is a broad difference between a private corporation organized for a private purpose, though subserving a public interest, and a public corporation, like a city or county, organized for public purposes only, and whose obligations must be paid from public funds raised for public purposes only. The latter class of corporations may always defend, on the ground that the supposed contract was outside of the authority conferred on it by law." 1 Dillon Mun. Corp. Sec. 381.

The only authority the boards of the two counties had to construct a joint bridge is to be derived from the statute above set out. The conditions therein enumerated must be performed before the exercise of this authority. If the statute prescribes the manner in which the power shall be exercised, and the method prescribed is disregarded, and a contract entered into, such contract is void. In the case at bar the contract was made in disregard of express provisions of the statute, and although the bridge may be worth the agreed price, and was accepted and used by the two counties, yet the contract being void could not afterwards be ratified and made binding. Such a rule might seem to be a harsh one had it not been long declared that persons entering into a contract with a municipality are bound to know whether the officers of the municipality have the power to make the contract.

Thus it is held in *Clements.* v. *Lee*, 114 Ind. 397, that a person about to enter into a contract with a city must examine the records so far as to see that the common council has taken, or attempted to take the steps necessary to enter into a contract. *Board, etc.*, v. *Galloway*, 17 Ind. App. 689; *Johnson* v. *Common Council, etc.*, 16 Ind. 227; *Woodruff* v. *Board, etc.*, 10 Ind. App. 179; *State, ex rel.*, v. *Common Council, etc.*, 138 Ind. 455; *Board, etc.*, v. *Fertich*, 18 Ind. App. 1. See *First Nat'l Bank* v. *Osborne*, 18 Ind. App. 442; *Board, etc.*, v. *Allman*, 142 Ind. 573, 39 L. R. A. 58, and cases cited; *First Nat'l Bank* v. *Adams School Tp.*, 17 Ind. App. 375.

In Dillon on Municipal Corporations, section 447 (4th ed.), the author says: "And it is a general and fundamental principle of law that all persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract. * * * This principle is more strictly applied, and properly so, than in the law of private corporations." In the case of *Smith* v. *Board, etc.*, 6 Ind. App. 153, cited by appellant, the board had let a contract, as required by law, for building a bridge. After the work was begun a change was made in the plans and a supplemental contract was let, no notice of which letting was given. It was held that the county was liable for the work occasioned by the supplemental contract. It has been frequently held that where a board of commissioners have let a contract, and changes have afterwards been made in the original plans, calling for extra material and work, and the work and material have been done and furnished, the county is liable for their value. *Board, etc.*, v. *Motherwell Iron, etc., Co.*, 123 Ind. 364; *Board, etc.*, v. *Hill*, 122 Ind. 215; *Board, etc.*, v. *Byrne*, 67 Ind. 21.

It has also been held that where a board of com-
missioners have let a contract for the erection of a
public building, and the contractor, after beginning
the work, abandons the contract, the board may take
charge of the work, and complete the building with-
out adopting new plans and specifications, or letting
a new contract, and bind the county for money, labor
or materials so furnished. *Bass Foundry, etc., Co.* v.
*Board, etc.,* 115 Ind. 234, and cases there cited. But
in these cases the initiatory steps which authorized
the municipality to proceed with the work had been
taken, and this condition is the basis upon which a
recovery is permitted. To permit a recovery upon a
*quantum meruit* solely for a work which can be done
only by authority of a statute, would necessarily lead
to the conclusion that a statute might be wholly
ignored, and the county bound provided it received the
worth of its money. It will not do to say that in any
given case the board may determine for itself whether
it will follow the statute or disregard the statute and
follow a method of its own, although the method
adopted and carried out might produce equally as
good results as that provided by statute.

The distinction must be kept in view between those
cases which hold that a municipal corporation, which
has received the benefit of money, labor, or property
upon a contract made without due formality, and
which is not prohibited by statute, is liable to the ex-
tent of the value of what has been received and ap-
propriated, and those cases where the municipality
has power to act only by virtue of a statute, and, in at-
tempting to exercise the power, has failed to observe
the statutory requirements. In the one class of cases
the power to contract exists, while in the other the
power to contract does not exist, because of the failure
of the municipality to do that which alone could give
it such power. Judgment affirmed.