LOHRIG *v.* ROCHAT ET AL.

[No. 13,355. Filed December 12, 1929.]

*Curtis Marshall* and *Bear & Bear*, for appellant.

*McMullen & McMullen, James S. Wright* and *Bear & Cole,* for appellees.

NICHOLS, J.—It is averred in the complaint that in the year 19—, the school town of Patriot, Switzerland county, and the school township of Posey, Switzerland county, were duly consolidated for school and educational purposes under acts of the General Assembly of 1917, Acts 1917 p. 545, being §6578 *et seq.* Burns 1926, and that said consolidated school town and school township have been acting as such ever since; that appellees Rochat and Platt and one Bunger were the trustees of said consolidated school district for the year 1923; that since said time, the term of office of said Bunger expired, and one Percy Lyons was chosen to succeed him as such trustee; that appellees Rochat and Platt, and said Bunger, as such trustees, at all times took upon themselves the management of all school buildings and school matters in said consolidated school district, together with the preparation for and erection of school buildings, and the proper furnishing of the same, as was necessary; that in the spring of 1923, said school trustees met for the purpose of considering the necessity, emergency and

advisability of erecting a high-school building in said town and a grade-school building in said school township at a place known as "Quercus Grove"; that, at said meeting, it was resolved by said trustees, or a majority of them, that there was a necessity and an emergency existing for the erection of said two school buildings for the proper handling of the school children of said consolidated school district, and, at said time and at subsequent meetings of said school trustees, they employed as an architect appellee Detraz to draw and submit to them plans, drawings and specifications for said two school buildings which said architect did, and which plans, drawings and specifications were by said trustees duly accepted and approved; that said trustees, at said meetings, further resolved to issue and sell the bonds of said consolidated school district to raise the necessary funds to pay for the erection of said two school buildings; and said trustees authorized the sale of said bonds and ordered proper notices to be given, advertising for bids for the erection of said two school buildings; that appellant, among many others, made and filed bids, and he, being declared by said trustees to be the lowest and best bidder, was awarded the contracts for the erection of said buildings, and said school officers, on May 26, 1923, entered into a written contract with him to erect said buildings in accordance with said plans and specifications, at a contract price of $11,969 for the grade-school building and $12,646 for the high-school building.

Thereupon, appellant executed and filed with said school trustees a sufficient bond in the penal sum of $24,614, conditioned for the faithful performance of said contract, which bond was accepted and approved by them; that said trustees, in furtherance of their plans to build said buildings, sold, or represented that they sold, bonds to appellee bank and deposited the money so procured from the said sale, or supposed sale, in said bank, to be

used to pay for the erection of said two buildings.

Appellant further alleges that he has been for more than 15 years last past a resident of the city of Madison, and that he has been for more than 12 years last past, a contract carpenter and builder in said city and community, which is about 40 miles from Patriot and Quercus Grove; that he, at no time, did any business or made any visits to either of said places prior to or during the year of 1923 or 1924, except to file his said bid, execute his said contract and proceed with work thereunder, and he had no knowledge whatever of the taxable wealth or property in Switzerland county, or of the taxable wealth or property of said consolidated school district, nor any knowledge whatever of the number of children of school age in said consolidated school district, nor of the steps necessary to be taken for the purpose of erecting school buildings and the issuing, execution and sale of school bonds of school districts to pay for the same; that he has never held the office of township school trustee or any office of like nature which involves in any way the erection of buildings for school purposes; that, before said contracts were awarded to him, and before he did anything whatever toward executing his part thereof, appellees Rochat, Platt and Detraz, each and all, personally represented to appellant that they, Rochat and Platt, while acting in session as a board of school trustees, together with said appellee Detraz, architect, had done all things necessary to make the contract legal and binding upon the said consolidated school district; that his pay for the material to be furnished and work to be done was absolutely certain, that they had taken all the proper and necessary steps to sell, and had sold the bonds of said school district to appellee bank and such bank had paid cash for them, and the money was deposited therein ready to be paid to the contractor as fast as he could procure and deliver

the material on the ground and construct said buildings, and the architect file his estimates therefor; that appellee bank, at said time, fully confirmed the said statements, and said bank did then place to the credit of appellant for his use in the erection of said two buildings, $6,056.25, being part of the purchase money paid to said school district for said school bonds by said bank; that appellees and each of them was in a position to know the facts so stated by them, and occupied positions that gave them superior knowledge of all such facts, and knew or ought to have known that appellant would be guided by their representations and that he must necessarily depend upon them for such facts in the matter, and ought to have known and did know what steps should be taken by them in the building of schoolhouses, as it was their duty under the law to know; that said appellees and each of them professed to know whereof he spoke, and to know that the matters stated by them were true without question, and knew or should have known that appellant would rely and act upon them; that appellant did rely without question upon said statements and representations so made by appellees and each of them, and believed that each of them knew and ought to have known the amount of taxable property in said school district; that appellees Rochat, Platt and Detraz knew or should have known the number of children of school age attending school in said district, and enumerated therein, and whether said districts and each of them could be bonded for a sufficient sum to build said two school buildings, and believing that each of them knew what steps should be taken in the building of schoolhouses, and the bonding of school districts to pay therefor, and fully believing that they had taken the proper steps, and that they knew what steps were necessary as stated by them, and having the utmost faith and confidence in each and all of them, and relying upon their

said statements, being ignorant of what was done and attempted to be done, or what was necessary to be done by them, and believing everything was regular and proper, he was induced thereby to proceed with the erection of said school buildings; that had it not been for said representations and statements so made by said appellees and each of them, he would not have executed said contract, nor started the erection of said school buildings, nor spent all the money, time and labor, and furnished all the material he furnished in such erection of said buildings, until he was compelled to stop on account of the acts and conduct of appellees and each of them; that he procured and had delivered to the said building sites all the lumber, brick, cement, sand, lime and material of all kinds, which were required for the construction of said two buildings; that he placed employees on the construction of both said buildings, and spent his own time and checked from said amount so placed to his credit in appellee bank, and from the purchase price of said bonds to pay for material, labor, freight, etc., and that he was compelled to and did ship and haul all his material for said buildings from the city of Madison, a place 40 miles distant, and from other places equally distant, all of which was necessary, as the material for same could not be procured from any nearer source; that he had delivered practically all the material and supplies necessary, excavated the basements for said buildings, put in the concrete foundations and walls for said basements, and had expended large sums of money in material, hauling, labor, freight, etc., in the construction of said buildings, when certain taxpayers filed remonstrances against the issue and sale of said bonds, and the use of the money procured from the sale thereof to build said buildings, and remonstrated against the execution and carrying out of said contract, and payment of money thereon, for the reasons, as claimed

by said taxpayers, that the execution of said contract and the execution and sale of said school bonds were illegal and void; that such proceedings were had therein that said contract and bonds were declared by the State Tax Board to be illegal, and the building and erection of said school buildings under said procedure were held up and discontinued by appellees, and the payments therefor to appellant for material, labor, etc., so furnished as aforesaid under his said contract were stopped, and he was compelled to cease all work thereon; that said trustees thereafter took such steps that they again let the contract for the finishing and completion of such school building in the town of Patriot, but not for the Quercus Grove school building; that no further steps have been taken to finish the building commenced at the said Quercus Grove site; that appellant again submitted his bid for the building or completion of the building at Patriot, and he was awarded the contract, and performed the same in all particulars, and said high-school building, upon its completion, was turned over to the school authorities, and accepted and paid for by them; that appellees Rochat and Platt, as such trustees, upon estimates made by said architect, and approved and accepted by them, for work, labor, material, etc., furnished by appellant under said original contract, paid to him $1,819 from said funds so deposited in said bank from the sale of said first school bonds for the financing of said two school buildings; that said appellees, for the purpose of defrauding appellant, conspired together to make him lose the whole amount of said material, labor, etc., furnished by him and used by him in the said Quercus Grove building, and also that the material, labor, etc., delivered to said building and not used therein, but disposed of with great loss to appellant, and in pursuance of said conspiracy, and in carrying out their design to defraud appellant and save appellee bank

harmless, and to keep any of said loss from falling on said bank, said trustees and architect, deducted from the amount due appellant under said second contract, being for the Patriot high-school building, the said amount of $1,819 theretofor paid him on the Quercus Grove building, to which action of said trustees, appellant, at the time, strenuously objected, but said trustees nevertheless kept and retained said amount, and still keep and retain the same; that, in furtherance of the conspiracy of appellees to defraud appellant out of his services, labor, material, etc., so furnished by him for said Quercus Grove school building and to save harmless appellee bank, such school trustees entered into said new contract with appellant to erect said Patriot high-school building, and the second issue of bonds of said school district in the sum of $12,000 was sold to said bank to secure the money to pay for the completion of said Patriot high-school building; at their meeting January 26, 1924, they passed an order directing said appellee bank to deduct from the proceeds of said second sale of said school bonds so purchased by it the sum of $6,020, which was the amount so placed to the credit of appellant by said bank from the sale of the first lot of bonds so made to said bank and paid out by appellant on both the Patriot and Quercus Grove school buildings, and said bank did deduct said total amount of $6,020 from the said second purchase price of said school bonds, leaving the sum of $5,080 to the credit of said school trustees to pay for said Patriot school building; that, of said amount of $6,020 originally deposited and placed in his name and checked against by him, $2,402.59 was paid out by him for material, labor, etc., used in said Quercus Grove school building, and since the said sum of $1,819 originally paid him for material, labor, etc., furnished and done on said Quercus Grove school building was deducted from said second contract price due

appellant on said Patriot school building by said school trustees, on account of said fraudulent schemes of appellees, appellant has lost the entire sum of $2,402.59, and said bank has not only come out whole on the principal of said $6,020, but received interest thereon from said school trustees in at least the sum of $150; that all of said statements and representations so made by appellees and each of them to appellant were false and were made with the avowed intent and purpose of inducing appellant to act on them and to execute and proceed with said first contract to erect said two buildings and each of them, under said contract and the sale of said first bonds, and that he did proceed with the execution of the contracts entirely upon the faith of said statements and representations, and not otherwise, when the truth is, appellant has been informed and believes said first contracts and the issuing and selling of said first school bonds were illegal and so considered oy appellees and each of them, and that appellees and each of them knew and should have known that said contracts and the sale of said bonds were illegal and void, and that appellees and each of them knew and should have known that their representations and statements to appellant that said contract and bonds were in all things valid and that his pay for said material, work, labor, etc., was sure, were false and would cause appellant to lose whatever work, labor, material, etc., he might put into said project; that appellant did carry out everything as required of him under said first contract for the building and erection of said two school buildings until he was compelled to stop, and that, by reason of the premises, he has sustained great loss and damage in the sum of $3,000. There is a demand for judgment against appellees and each of them for $3,000 damages.

Appellee bank, severing in its defense, filed its motion to make the complaint more specific. This motion was

sustained as to the third specification, which was, in substance, that appellant be required to set out the officer or officers, agents or employees or servants of appellee bank who entered into said alleged conspiracy with the said consolidated school board to cheat appellant or to defraud him, in any way as mentioned, or to make any deduction from the said fund that had been formerly paid him on the said Quercus Grove building by said trustees, and, under what circumstances, and where, and when, the said agents, employees or agents of said appellee bank made such alleged statements, and how, and in what way, the bank, its servants, agents or employees were in the slightest degree connected with this transaction of deducting and keeping appellant from retaining the money that had been theretofore wrongfully paid to him, without any warrant or authority from any reliable or legal source; to set out whether the alleged conspiracy that is mentioned in the complaint, involving the bank, was entered into between the bank and the board before the first contract was made to build the Quercus Grove schoolhouse and the Patriot schoolhouse by the said school board with appellant, or after the said contract was entered into; and if there were more than one conspiracy against appellant, between the bank and the consolidated school board, so to state, and give the date, time and place of the conspiracy, and which agent, employee or servant of the bank entered into the said conspiracy.

Appellees Rochat, Platt and Detraz filed their separate and several demurrer to the complaint, which were sustained. Appellant refused to make the complaint more specific and to amend or plead over, and judgment was rendered by the court on said motion and demurrers that, as to the motion of the bank, the complaint be dismissed and be struck from the docket and record, and, as to the demurrer of the other appellees, it was

adjudged that appellant take nothing by his complaint. From this judgment, this appeal. The rulings of the court on the motion to make more specific and the demurrers are assigned as error.

The court did not err in sustaining appellee bank's motion to make the complaint more specific in the particulars above set out. In order that the bank be held for damages because of alleged fraudulent acts and statements, it is apparent that such acts must have been committed by someone officially connected with the bank, and as such, in a position to bind it, and that his acts must have been committed and statements made while in the transaction of the business of the bank. We can see no reason why, if fraudulent acts or statements are charged against such an institution, the pleader should not be required to name the persons officially so connected with the bank as to bind it, and to give the time and place of such acts and statements, in order that it may be determined as to whether the same were made under such circumstances as to make the bank liable. Appellant gave no reason to the lower court why he could not comply with the court's order to make the complaint more specific, and, assuming that his charges were true, we can think of no reason why he could not have done so. But, assuming that the court erred in its ruling to require appellant to make his complaint more specific, and we do not so hold, still if, either with the amendment or without it, no cause of action is stated against appellee bank, then appellant is not harmed by the ruling of the court on the motion and the rendering of the judgment by the court against appellant striking out his complaint as to the bank because of his refusal to comply with the court's order.

While appellant has undertaken by the averments of his complaint to recover against appellees on the theory

of fraud and conspiracy to defraud appellant, we are not impressed, from the complaint as a whole, that there is averred any sufficient charge of fraud or conspiracy to defraud appellant. It appears, rather, that the acts preliminary to the commencement of the construction of the school building, and the work on the construction thereof, which continued until the action of the State Tax Board declaring the bonds void, resulting in the loss to appellant, grew out of the ignorance of appellant and appellees of the law under which they were attempting to operate. Appellant cannot be heard to say that he was ignorant of the law and that he was depending on the superior knowledge thereof on the part of appellees. It is well established that any person dealing with a municipality, or with municipal authorities such as school trustees, is bound to know their limited authority to enter into contracts involving the expenditure of public funds, in this case for the construction of a schoolhouse, and that, for his own protection, he must examine the relevant records and determine for himself whether the proper steps have been taken to enter into a lawful contract. In *Wrought Iron Bridge Co.* v. *Board, etc.* (1898), 19 Ind. App. 672, 48 N. E. 1050, the case involved the construction of a bridge, but the contract was made in disregard of the express provisions of the statute, and it was held that, although the bridge might be worth the price, and was accepted and used, yet the contract being void, could not afterwards be ratified and made binding, the court stating that such a rule might seem harsh but that it had long been declared that persons entering into a contract with a municipality are bound to know whether the officers have the power to make it. The court cited with approval *Clements* v. *Lee* (1888), 114 Ind. 397, 16 N. E. 799, where it was held that a person about to enter into a contract with the city must examine so far as to see

that the common council has taken, or attempted to take, the steps necessary to enter into the contract. The court then quotes with approval from Dillon, Municipal Corp. (4th ed.) §447, that: "It is a general and fundamental principle of law that all persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract."

It does not appear by the averments of the complaint that there was any fiduciary relation existing between appellant and appellees, and so far as appears, they were total strangers each to the other until the transaction here involved. So far as appears by the complaint, appellant made his bid and entered into the contract for the construction of the building without any urging whatever by appellees. The parties involved were on an equal footing, and there was as much reason for appellee bank to contend that appellant should have warned it that the bonds were void as that appellant should expect the bank so to warn him. It is apparent that all of them were ignorant of the law and this excuses none of them. Having failed to examine the records and learn the law, and thereby having failed to use diligence, appellant cannot shift the responsibility for his loss to others who were on an equal footing with himself, by the claim that they fraudulently misrepresented the law to him. Under circumstances such as here, he must know for himself.

In reaching this conclusion, we do not determine as to whether the school trustees, acting for the school district, could lawfully withhold from the money due appellant on his valid contract the amount paid to appellant for work and material under the void contract. The school district is not a party to this action, nor are

its officials, as such, and such a question is not therefore before us.

Affirmed.