438    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. v. Indiana State Board, etc.—35 Ind. App. 438.

## SILVER, BURDETT & CO. v. INDIANA STATE BOARD OF EDUCATION ET AL.

[No. 5,236.   Filed December 13, 1904.   Rehearing denied March 9, 1905.   Transfer denied May 12, 1905.]

1. STATUTES.—*Amendment.*—The act of 1893 (Acts 1893, p. 165) is not an amendment of the act of 1891 (Acts 1891, p. 99) or the act of 1889 (Acts 1889, p. 74); but is an independent statute.   p. 449.

2. SAME. — *Construction.* — *Board of School Book Commissioners.* — *Duty at Expiration of Contract.*—Under section 10 of the act of 1893 (Acts 1893, p. 165, §5891 Burns 1901) it is the duty of the state board of school book commissioners, at the expiration of a schoolbook contract, either (1) to determine upon a revision of* the books then in use, or (2) to contract for a new book or books to be introduced into the schools.   p. 449.

3. SAME.— *Construction.*— *Intent.*— *Schoolbooks.*— It is the manifest intent of the statute of 1893 (Acts 1893, p. 165) that schoolbooks contracted for shall remain in use five years, at the expiration of which time they may be revised or new books introduced.   p. 453.

4. OFFICERS.—*State Board of School Book Commissioners.*—*Powers.*— The duties of the state board of school book commissioners are prescribed by statute, and such board can bind the State only by its actions within the powers so conferred.   p. 453.

5. SAME. — *State Board of School Book Commissioners.* — *Powers.* — *Notice.*—All persons dealing with the state board of school book commissioners are conclusively presumed to know the scope and bounds of its authority.   p. 454.

6. STATUTES. — *Revision of Schoolbooks.* — *Conditions.* — In order to make a revision of schoolbooks, the statute (Acts 1893, p. 165, §9, §5890 Burns 1901) requires (1) the state board of school book commissioners must select a competent author to make the revision, (2) the cost of such revision shall be paid by the contractor furnishing the books, (3) the cost of such revision shall be agreed upon before the revision is begun, (4) such board shall contract with some author to furnish the manuscript of such revision to the acceptance and satisfaction of the board, and (5) such contractor shall give bond to furnish such books.   p. 454.

7. SAME.—*Revision of Schoolbooks.*—*Manuscript to "Acceptance and Satisfaction" of Board.*—In making a contract for the revision of schoolbooks the statutory provision (Acts 1893, p. 165, §9, §5890 Burns 1901), that the manuscript of such revision must be to the "acceptance and satisfaction" of the state board of school book commissioners, must be complied with.   p. 455.

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

8. STATUTES.—*Revision of Schoolbooks.—Conditions Precedent.*—The requirements provided by statute (Acts 1893, p. 165, §9, §5890 Burns 1901) before a contract for revision of schoolbooks is consummated are conditions precedent to the making of such contract. p. 456.

9. OFFICERS.—*Statutory Powers.—Acts Within.*—Where a statute prescribes the method for a statutory board or officer to perform an official act, such method must be strictly followed. p. 457.

10. STATUTES.—*Granting New Powers.—Method of Performance Prescribed.*—Where a statute (Acts 1893, p. 165, §9, §5890 Burns 1901) grants a new power, and prescribes the method of its exercise, such method must be strictly followed. p. 459.

11. SAME.—*Mandatory.—Strict Construction.—Conditions Precedent.*—The act of 1893 (Acts 1893, p. 165, §5882 *et seq.* Burns 1901), being in the interest of the public, is mandatory and subject to strict construction, and the requirements therein will be construed as conditions precedent. p. 459.

12. CONTRACTS.—*Revision of Schoolbooks.—Statutory Requirements.—Nonperformance.*—No contract is consummated for the revision of schoolbooks where the state board of school book commissioners did not select a competent author to make such revision, and did not agree with the contractor upon the cost of such revision, and did not contract with any author to furnish the manuscript for such revision to its "acceptance and satisfaction," and where such contractor did not enter into a contract to furnish such revised books and give bond for the faithful performance of such contract. p. 461.

13. ESTOPPEL. — *Statutory Board. — Prescribed Powers and Duties.*— No estoppel lies against the state board of school book commissioners to prevent it from questioning an alleged contract for the revision of schoolbooks, since the contractor is conclusively presumed to know the law and the statutory powers of such board. p. 462.

14. SAME.—*Knowledge.*—Where there is equal knowledge by both parties there can be no estoppel. p. 464.

15. PLEADING.—*Complaint.—Contracts.—Allegations of Performance.*—A complaint for the enforcement of a written contract must allege the performance of the conditions on plaintiff's part or a legal excuse therefor. p. 464.

16. STATUTES.—*Revising Schoolbooks.—Contract For.—Execution.*—A resolution of the state board of school book commissioners for the revision of a schoolbook and the written consent of the contractor therefor does not constitute a contract, since the statute (Acts 1893, p. 165, §14, §5895 Burns 1901) requires that the parties execute a new contract and that the contractor give a bond for the faithful performance thereof. p. 465.

17. SAME.—*Revision of Schoolbooks.—Powers of Board.*—The state board of school book commissioners is not compelled by statute (Acts

1893, p. 165, §5882 *et seq.* Burns 1901) to continue the revision of schoolbooks, after deciding to have a revision, if not satisfactory to such board.   p. 465.

From Superior Court of Marion County (66,830) ; *John L. McMaster,* Judge.

Action by Silver, Burdett & Co. against the Indiana State Board of Education and others.   From a decree for defendants, plaintiff appeals.   *Affirmed.*

*Robert W. McBride,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley* and *James W. Noel,* for appellees.

WILEY, J.—On the joint petition of the parties, this cause was advanced.·

Appellant brought a suit in equity to enjoin the state board of school book commissioners, and the individual members thereof, from entering into a contract with D. C. Heath & Co., a book publishing corporation, to furnish certain text-books for the use of the public schools of the State.   A temporary restraining order was issued.   'Appellees appeared and filed a demurrer to the complaint, which demurrer was sustained.   The appellant refused to plead further, the temporary injunction was dissolved, and judgment rendered against appellant for costs.

The only question presented by the assignment of error is the overruling of the demurrer to the complaint.

The cause is of such importance, not only to the parties litigant, but to the public as well, that a full statement of the facts relied upon should be made.   By its complaint appellant avers that it is in the business of publishing and selling the arithmetic known as "Normal Course in Numbers," by John W. Cook and Nebraska Cropsey; that the appellee the Indiana State Board of Education is a board created by statute, and clothed with powers relating to the administration of the public school system; that the appellee the Indiana State Board of Education constitutes

*ex officio* the state board of school book commissioners, with certain powers concerning the selection and adoption of text-books, and of causing, from time to time, revisions thereof to be made, and with the power to contract for the supply of said books for use in the public schools. It is further averred that on the 27th day of April, 1899, the appellee, state board of school book commissioners, entered into a written contract with appellant, by virtue of which appellant agreed to furnish certain books for use in the public schools, among them being the Normal Course in Numbers, by John W. Cook and Nebraska Cropsey; that by said contract appellant further agreed to furnish said books, at designated prices, in exchange for books of corresponding grades in the hands of the pupils of the schools. The contract bound appellant to maintain and furnish said books, equal in all respects to the standard text-books, as provided by law. Further, that, in compliance with the law, appellant entered into a bond, with approved surety, in the penalty of $30,000, conditioned for the faithful performance of its contract; that by said contract appellant acquired the right, for a term of five years, to furnish the books therein described for all of the public schools of the State, and that it has kept all of the requirements and performed all of the conditions of its contract.

It is next averred that on the 14th day of November, 1902, said board took the following action, as exemplified by its record, to wit: "As the State's contracts with certain publishing companies will expire in about one year and a half, it was deemed advisable to consider for a time, in a preliminary way, the question of ordering a revision of some of the text-books. The whole subject was discussed informally at some length. Heretofore, when extensive revisions have been ordered, it has been found that the time allowed for such revisions has not been sufficient, and, in a number of cases, the revised books were not ready for distribution on the opening of the schools at the

442 APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

beginning of the year. That more time may be given for revising any texts that it may be found necessary to revise, and thus have them ready in good time for use in the schools, it was resolved by the board to meet on Thursday, December 18, at 10:30 a. m., as a board of school book commissioners, to decide whether any of the text-books now in use shall be revised and the contracts for the same renewed. The following committee was appointed to consider and report to the board at its December meeting, in general, what revisions would be necessary to make the books more acceptable to the board and the teachers of the State; also to ascertain whether the publishers would consent to such revisions as the board might think proper to order: Arithmetics, Presidents Parsons and Bryan and Superintendent Cooley * * *." And thereafter the following action was taken, as shown by the minutes of a meeting of said board held December 17, 1902, as follows: "The committee on the revision of arithmetics submitted the following report: 'To the state board of school book commissioners. Gentlemen: On the 14th day of last November we were appointed a committee to consider and report to the board at its December meeting: (1) Whether the publishers of the arithmetics now in use in public schools of the State would consent to such revisions as the board might think proper to order; (2) what revisions in general would be necessary to make the books more acceptable to the board and the teachers of the State. We beg to report as follows:

"First. As the correspondence herewith submitted and made a part of this report shows, Silver, Burdett & Co., the publishers of the arithmetics, express their entire willingness to make any changes in either or both of the arithmetics which this board may direct, or that will meet the approval of the board.

"Second. On educational and economic grounds the committee is in favor of retaining the books and contracting

for the same for another period of five years, if they can
be made acceptable to the state board of school book com-
missioners.   We favor the revision and the readoption of
these books, upon the following conditions:   (1) The re-
sponsibility for making the books acceptable to the board
shall rest entirely with the publishers, and not with this
board or a committee of the same.   (2) That the omis-
sions, insertions of new matter of all kinds, and all pro-
posed changes in the books now in use be presented to the
board for its consideration, not later than January 1, 1904.
(3) The board expressly reserves the right to reject the
books as revised if, when submitted at the time named—
January 1, 1904—they should not be acceptable, and to
receive and consider bids from other publishers to furnish
texts in arithmetic.   (4) A committee of three shall be
appointed by the president of the board to confer and
advise with the publishers as the revision proceeds, and
to serve as a medium of communication between the pub-
lishers and the board; but such committee shall have no
power to bind the board in accepting any of the changes
or revisions proposed, or in the final acceptance or rejection
of the books.   (5) If, when the revised books shall be pre-
sented to the board for adoption or rejection, it shall be
considered by the board impracticable to use both the revised
books and the old books with the same classes, the publishers
shall agree to give an exchange price of twenty-five cents on
the elementary arithmetic, and thirty-five cents on the ad-
vanced arithmetic.' "

The complaint then alleges that after the foregoing meet-
ings of said board, appellant addressed to it a letter dated
November 29, 1902, in which it expressed its consent to a
revision of the arithmetics.   We copy the following from
the letter:   "We shall be pleased to coöperate with your
board, acting as a whole or represented through a com-
mittee, to the fullest extent possible in making such re-
vision in the arithmetics as your board may decide will best

444    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

meet the interests and requirements of the schools of your State. In short, whatever changes in the line of revision in the present editions may seem necessary to your board, we, as publishers of the arithmetic, will cheerfully make."

It is further averred that at a meeting of the board a motion was made and unanimously adopted that the Cook-Cropsey arithmetic then in use be revised, and that an advisory committee of three be appointed for consultation with the publishers, provided that neither the committee nor the board of education should be committed to the adoption of the revised text-books unless they should be made satisfactory to the board on or before January 1, 1904; and provided, further, that satisfactory exchange conditions be made in case the revised books could not be used in classes with the old books. It is then averred that said committee was appointed, and consisted of W. W. Parsons, W. L. Bryan and F. W. Cooley.

The complaint then avers that on the 13th day of January, 1903, the president of the Indiana state board of school book commissioners addressed a letter to appellant, in which he acknowledged the receipt of appellant's letter, consenting to a revision of the books named, and communicating the fact that the board had passed a resolution to the effect that the Cook-Cropsey arithmetics should be revised; that a committee had been appointed for that purpose, and further advising appellant that neither the board nor the committee should be committed to the adoption of the revised books unless they should be made satisfactory to the board on or before January 1, 1904; and, further, that satisfactory exchange conditions could be made. In that letter the appellant was further advised that the board would be glad to have addressed to its president a communication from appellant accepting the conditions and terms of the order so made, and advising appellant to proceed with the committee named. It is further averred that on the 17th day of January, 1903, appellant replied to that

NOVEMBER TERM, 1904.                445

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

letter, giving its consent, and accepting the conditions and terms imposed for the revision of the books.

It is then averred that on the 3d day of February, 1903, said advisory committee addressed a letter to appellant as follows: "The committee of the state board of education on the revision of arithmetics held a meeting in this city yesterday. You will recall that the original action of the state board of education leaves the publishers of the various text-books wholly responsible for making revisions acceptable to the state board. Heretofore committees have been appointed that have supervised the work of revising the books, but by this recent action the matter of revision is wholly in the hands of the publishers. The committee is an advisory committee only, but it is quite willing to coöperate as fully as possible with the publishers in their efforts to revise the books in the most satisfactory manner. The committee takes the liberty to suggest that Prof. O. L. Kelso, of the department of mathematics in Indiana State Normal School, and Dr. Robert J. Aley, of the department of mathematics in Indiana University, would, in the opinion of the committee, be excellent men for you to employ to make this revision. You are at entire liberty, however, if you desire to do so, to employ other persons for this work. The committee only suggests and recommends these gentlemen for your consideration, leaving the matter of selecting the revisors and the work of the revision entirely in your hands."

That on the 19th day of February, 1903, appellant replied to that letter as follows: "We have been pleased to act upon the suggestion made by your committee, and have entered into an agreement with Dr. Robert J. Aley, of the Indiana University, and Prof. O. L. Kelso, of the Indiana State Normal School, to conduct the revision of the books, and we feel assured that the work will be done in a thoroughly satisfactory manner. We can assure your committee that we shall coöperate with these gentlemen and aid them to the best of our ability in the work that they have undertaken."

446    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

The complaint then avers that, acting on the suggestion of said committee, it employed Robert J. Aley and O. L. Kelso to perform the necessary work of revision; that said boards, nor either of them, agreed with appellant upon the cost and expense of such revision, nor did they, or either of them, suggest such agreement, but that appellant voluntarily contracted and agreed with said Aley and Kelso to make said revision for the compensation of $2,500, which it paid, and that said revisors, acting under and in pursuance of their contract, entered upon a complete revision of said books; that said revision when completed was submitted to the Indiana board of education and said state board of school book commissioners on the 1st day of January, 1904.

Appellant further avers that all the cost and expense of said revision, aggregating $5,000, was paid by it. The complaint then makes the following averment: "Plaintiff further avers that by reason of the premises, and by reason of its compliance with each and all of the aforesaid requirements made by said Indiana State Board of Education and said State board of school book commissioners for the State of Indiana, it became and was entitled to a renewal of its said contract for another term of five years, and that by virtue thereof its said contract was thus renewed and extended, and the valuable rights secured to it by said contract were in like manner and for said full additional period of five years thus renewed and extended."

It is further averred that appellees, in utter disregard of appellant's rights in the premises, and before January 1, 1904, advertised for bids from publishers of schoolbooks for furnishing said books to take the place of said books thus revised, and that on the 8th and 9th days of March, 1904, acting as a state board of school book commissioners, awarded to D. C. Heath & Co. a contract for supplying to the schools of the State a set of books designed and intended to take the place of those which plaintiff is and was under

contract to furnish to said schools, and thereby undertook and assumed to abrogate and annul plaintiff's rights in the premises, and to cancel and set aside plaintiff's said contract, which had, by the revision of said books, been continued and renewed for an additional period of five years from the 27th day of April, 1904; that the rights which said board thus attempted to take from appellant were of the value of $15,000 per annum, and that the action thus taken, if appellee, state board of school book commissioners, is permitted to consummate the same, will work a great and irreparable injury to appellant, for which it could not be compensated in damages.

It is further averred that the books attempted to be adopted by appellee, the state board of school book commissioners, and for which said contract had been awarded to D. C. Heath & Co., were and are imperfect and incomplete, and in the adoption of said books, and in the order directing and making the contract for awarding the same, it was by said board directed that the contract with D. C. Heath & Co. should be executed only after said imperfections and defects had been corrected and remedied, and that said board authorized and directed appellees Cotton and Parsons, respectively the president and secretary of said board, to execute the contract with said D. C. Heath & Co. on behalf of the State, after such corrections had been made.

It is finally averred that notwithstanding appellant's rights in the premises, and notwithstanding the condition attached to the order of said board providing for the corrections of said errors and imperfections in said books proposed to be contracted for, appellees are now proposing and threatening to execute at once a contract with D. C. Heath & Co., without said errors and imperfections having been completed, the effect of which, if duly executed, would be to set aside plaintiff's contract and to deprive it of all the valuable rights secured to it thereby, and that it is informed and believes, and so charges as a fact, that, unless a tem-

448    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

porary injunction be issued, said contract will be at once executed, to its detriment, etc.

While appellant's learned counsel has stated several propositions, and ably and earnestly discussed them, the groundwork of his entire argument is substantially laid under the first, and we give it in his own language: "The appellant, by its contract of April 27, 1899, acquired not only a contract right for the period of five years specified in the contract, but, also, by the statute, acquired a contingent contract right extending indefinitely beyond the term of five years by virtue of the statute, §5891 Burns 1901 [Acts 1893, p. 165, §10] : 'And at the expiration of any contract now in existence, or which may hereafter be made by the state board of school [book] commissioners for furnishing books in the common schools of the State of Indiana, the books then in use in the common schools of this State under such contract shall be continued in use therein at the same price, and upon the same terms and conditions, until such time or times as the state board of school book commissioners shall determine that a revision thereof is necessary for the best interests of the school, when such revision shall be made or a new book contracted for and introduced for use in the schools as hereinbefore specified.' "

Counsel further contends that under the statute the board is required to choose between one of two courses, viz. : (a) Revise the books in use, or (b) advertise for new books. In view of this position assumed, counsel asserts that the "revision adopted by the board December 17, 1902, and the written acceptance by the appellant, dated January 17, 1903, and filed with the board, constituted a complete and valid contract, into which the law entered as an essential part;" that that contract bound the board to have the books revised under its direction, and that it could pursue no other course.

If we have not mistaken appellant's contention, we have fairly stated it. The decision of the questions involved

depends largely upon the construction of certain statutes, by virtue of which the state board of education, which is *ex officio* state board of school book commissioners, is authorized to act and provide for schoolbooks to be used in the public schools. These two boards are creatures of statutes, and their duties and powers are wholly prescribed by statute.

1. It is therefore important first to look to the statute for guidance. For some years prior to 1889, the schoolbook question in this State had attracted much attention, and was of such vital importance that the legislature wisely asserted its authority, and in 1889 (Acts 1889, p. 74) passed the initial act, by virtue of which the State might prescribe the books that should be used. In 1891 (Acts 1891, p. 99) the legislature passed an act supplementary to the act of 1889, *supra,* by which additional duties were imposed upon the state board of school book commissioners, and additional provisions made for furnishing books for the public schools. In 1893 (Acts 1893, p. 165) the legislature passed another act pertaining to the same subject-matter. Counsel refer to this latter act as an amendment to the former act or acts, but it is not an amendment, but, as indicated by the title, it is an act "further regulating the furnishing of books for use in the common schools * * * providing for the revision of such books at the cost of the contractor when deemed necessary by the state board of school book commissioners, and their continuance in use when so revised," etc.

2. Those provisions of the statute which pertain to the revision of the books in use are the only ones to be considered, for the rights of the parties must be determined by them. The statutes under which the parties are contending for their respective rights have not been the subject of judicial interpretation or construction, and hence the questions involved are, to that extent, pioneer. The language of the statutes is plain, and not difficult to interpret

450    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

or construe. That the duty and authority of the board in the premises may clearly appear, we quote in full the statute upon which we must determine whether a binding contract was entered into between it and appellant, whereby the latter revised the books it had been furnishing, and whether the board was required to contract for the books so revised, for an additional period of five years.

The section providing for the revision of schoolbooks is section nine of the act of 1893, *supra* (§5890 Burns 1901), and is as follows: "Whenever the contractors for furnishing books for use in the common schools, under the provisions of existing laws hereinbefore specified, shall have filed with the State Superintendent of Public Instruction, their consent in writing to the revision, or the introduction of an intermediate book, as hereinafter provided, duly executed by them, and the state board of school book commissioners shall determine that a revision is needed of any or all of the books in use in the common schools under contract made pursuant to law, or that an intermediate grammar or language lesson is needed, then it shall be lawful for the state board of school book commissioners to order a revision to be made of any or all of such books as in their judgment may be found necessary for the welfare of the common schools of the State, in the manner and under the conditions following: The said board of school book commissioners shall select a competent author or authors to perform the work of revision of the subject-matter of such book or books so ordered to be revised. The entire cost of such revision, including the manuscript, illustrations, engravings, maps, and plates therefor, shall be paid by the contractor, or contractors, who may, at the time of such revision, be required to furnish such book, or books, under their contract with the State. The cost and expense, however, of such revision shall first be agreed upon by the state board of school book commissioners and the contractor or contractors, before such work of revision is commenced:

Provided, if said board and contractor or contractors shall, for a period of sixty days after an estimate of the cost of any proposed revision has been furnished by such state board to the contractor, be unable to agree upon an amount, which, in the opinion of such state board, would be necessary to cover the cost of any such revision, then the said state board may advertise for bids from publishers of schoolbooks for furnishing such book or books, the cost of revision of which could not be agreed upon; and in such advertisement, selecting and contracting for such book or books, the said board shall be governed by the provisions of laws now in force respecting such matters."

So much of section ten of the act of 1893, *supra* (§5891 Burns 1901), as is pertinent to the decision of the questions involved is as follows: "Whenever the revision of any book or series of books shall be determined upon by the state board of school book commissioners, and they shall have contracted with an author or authors to furnish the manuscript for such revision, sufficient time shall be given to the author in which to perform the work of revising the subject-matter of such book to the acceptance and satisfaction of such board. * * * And at the expiration of any contract now in existence or which may hereafter be made by the state board of school book commissioners for furnishing books for use in the common schools of the State of Indiana, the books then in use in the common schools of this State under such contract or contracts shall be continued in use therein at the same price and upon the same terms and conditions until such time or times as the state board of school book commissioners shall determine that a revision thereof is necessary for the best interests of the schools, when such revision shall be made, or a new book contracted for and introduced for use in the schools as hereinbefore specified: Provided, that at the expiration of any such contract the state board of school book commissioners shall require such contractor or contractors furnishing such books, to execute

452    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. v. Indiana State Board, etc.—35 Ind. App. 438.

a new bond, conditioned that they will continue to execute such contract in all regards as they had theretofore executed the original contract. * * * And, provided further, that nothing in this act contained shall be construed to prevent the state board of school book commissioners from exercising their discretion in deciding whether they shall order any of the books already in use under contract to be revised, or whether instead they shall advertise for books to be adopted instead of said books already in use."

While section fourteen of the act of 1893, *supra* (§5895 Burns 1901), may not have any direct bearing upon the decision of the case, yet we quote it, because it indicates the final step in the proceedings for a revision of school-books. It is as follows: "Whenever any book or series of books shall be revised by order of the state board of school book commissioners, such book or books, when completed and ready for use in the schools, shall be equal, in every respect, to the standard now fixed by law as to subject-matter, material, style of binding and mechanical execution, and said state board when contracting for any such revision shall require the contractor or contractors to enter into a written agreement for the furnishing of such books, and to execute bond with resident freehold sureties to the acceptance of the Governor of this State, for the faithful compliance with their contract, such bond to be in such amount as said board shall deem sufficient for the purposes contemplated."

Under these statutes and the averments of the complaint, the learned counsel for appellant asserts, as a basic proposition, that appellant, by its contract of April 27, 1899, acquired not only a contract right for the period of five years, but also, by the express provisions of the statute, acquired a contingent contract right extending indefinitely beyond the term of five years. The correctness of this proposition depends upon the question whether appellant has shown any contract existing between it and appellee,

the state board of school book commissioners, by which a revision of the books furnished by it was made, and this embraces the question whether it was made in harmony with the provisions of the statute. If so made, it should, in justice to all parties, be enforced. The statute to which we have referred embraces two distinct and separate contingencies, viz.: (1) That, after a series of books have been used for a period of five years, the board shall determine upon a revision of the books in use, or (2) that a new book or books shall be contracted for, under the terms prescribed by the statute, and introduced into the schools.

3. In any event, after a book has been agreed upon by the board and introduced into the schools, it shall remain in use for a period of five years, and then it may be revised and continued in use as revised, or a new book contracted for. This is unquestionably both the letter and the spirit of the statute.

The first and all important question for decision is: Has appellant shown, by the averments of its complaint, a valid and existing contract between it and appellees, by which the books it had been furnishing under its contract of April 27, 1899, were to be revised, and, as revised, continued in use for an additional period of five years? A correct answer to this inquiry will determine the rights of the respective parties.

4. The state board of education and the state board of school book commissioners are creatures of legislative enactment. They exist by virtue of the statute, and they have no power, and can not exercise any authority, except that which is conferred upon them by statute. They may be regarded as agents of the State, by virtue of which they act for the State in the interest of all the people. The scope of their agency is prescribed by statute, and by the statute they are commissioned to do specific things, and are directed as to the manner in which these must be done. Beyond the bounds of the statute they can not go, and they

can bind the State only while acting within their authority. With these general propositions there is no well-grounded contention.

By the original act creating the board and defining its duties and prescribing its powers a specific method was provided by which the board could contract with the publishers to furnish text-books for the use of the pupils in the public schools; and, by the supplementary act of 1893 (Acts 1893, p. 165), provision was made for a revision of books in use, should such revision be deemed advisable by the board, and the manner of making such revision was specifically and fully provided.

It is earnestly and ably contended by the learned Attorney-General that under the provisions of the statute no contract to revise the books was ever entered into between appellant and such board, and hence appellant acquired no contractual rights under the facts pleaded. This contention is based upon the proposition that important provisions of the statute were not complied with, and in the absence of such compliance no legal contract could be made. It is insisted that the steps taken, as disclosed by the complaint, were only tentative and preliminary to the execution of a contract, as required by statute.

5. Appellant is chargeable with a knowledge of the law, and hence it knew that the board could only act and bind the State by acting in compliance with the law. It was bound to know the scope and bounds of the board's authority.

6. Looking to the revision of schoolbooks as provided by statute, it is important to comprehend just what is required to be done, and this we must gather from the statute itself. Section nine of the act of 1893 (Acts 1893, p. 165, §5890 Burns 1901) provides that after the contractor shall have filed with the State Superintendent of Public Instruction his consent in writing for a revision, it "shall be lawful * * * to order a revision to be made * * *

NOVEMBER TERM, 1904.            455

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

in the manner and under the conditions following." The "manner" and "conditions" are prescribed by statute, and are these: (1) The board must select a competent author or authors to perform the work of revision. (2) The entire cost of such revision shall be paid by the contractor or contractors, "who may, at the time of such revision, be required to furnish such book, or books, under their contract with the State." (3) The cost and expense of such revision "shall first be agreed upon by the state board of school book commissioners and the contractor or contractors, before such work of revision is commenced." (4) Such board shall contract with an author or authors to furnish the manuscript for such revision, "to the acceptance and satisfaction of such board." (5) Said board, when contracting for any revision, "shall require the contractor or contractors to enter into a written agreement for the furnishing of such books, and to execute bond  *  *  * for the faithful compliance with their contract, such bond to be in such amount as said board shall deem sufficient," etc.

While it is not essential to inquire into the intention of the legislature in thus placing these conditions and restrictions upon the board, yet the Attorney-General has made some pointed suggestions which seem to be pertinent, and which we quote as follows: "They are required for the public benefit, and for the reason of public policy. They are intended to secure (a) the best ability for the work of revision; (b) fair compensation for good services; (c) independence of the publisher on the part of the author; (d) accountability of the author to the state board, to whose acceptance and satisfaction the work must be done; (e) security to the State that the publisher would not abandon the contract if it should prove unprofitable; (f) publicity as to the work and expense, which would prevent dishonest collusion."

7. An important provision of the law, and one which

456    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

has not been discussed by counsel in connection with the point we have in mind, is that which requires the board to contract with the author or authors to furnish the manuscript for the revision to the "acceptance and satisfaction of the board." There is but one reasonable construction that can be placed upon that provision, and that is, that before the manuscript shall go into the hands of the contractor for publication it must first be submitted to the board for its approval. The manuscript for the revision must be to the "acceptance and satisfaction" of the board, and this could not be without its submission to and examination by it. This is an important provision, in that the board is chargeable with furnishing for use in the public schools the best possible books at its command, and in this instance, the board having reached a conclusion that the books furnished by appellant required revision, it was the duty of the revisors and the duty of the board to demand that the manuscript of the revision be first submitted to it, to the end that it might be determined whether it was acceptable and satisfactory. The language of the statute will not admit of any other construction.

8. Referring again to the "manner and conditions" under which a revision may be made, it is important to note that, so far as the complaint shows, none of the five above noted were complied with, except the second. The board did not select an author or authors, but merely suggested the names of two gentlemen, whom it recommended as being competent to do the work. The cost and expense of the revision was not "first" agreed upon by the board and the appellant, before the revision was commenced. The board did not contract with the author or authors to furnish the manuscript to the "acceptance and satisfaction" of the board. The board did not require the contractor to "enter into a written agreement" to furnish books as revised, nor exact from it a bond conditioned for a "faithful compliance with their contract." The "manner and conditions"

indicated must be regarded as conditions precedent to authorize the board to contract for such revision, and the legislature having prescribed such "manner and conditions," and the board being a creature of the legislature, it could only bind the State while acting in harmony with the statute which created it, and conferred upon it all the power and authority it possesses. The statute was not complied with, either in substance or effect. The "manner and conditions" upon which a revision may be made, as prescribed by statute, were wisely ingrafted into the law to safeguard the best interests of the public in raising the standard and efficiency of the public schools, and should not and must not be lightly disregarded. The complaint goes only so far in showing a strict compliance with the statute as to show that appellant consented to the revision, and paid the entire cost thereof.

9. It is the firmly established rule that statutory boards or statutory officers, acting under statutes prescribing their duties and conferring upon them powers, must adopt and follow the method prescribed. *Wrought Iron Bridge Co. v. Board, etc.* (1898), 19 Ind. App. 672; *Platter v. Board, etc.* (1885), 103 Ind. 360; *Leonard v. American Ins. Co.* (1884), 97 Ind. 299; *Board, etc., v. Gillies* (1894), 138 Ind. 667, 673; *Peck-Williamson, etc., Co. v. Steen School Tp.* (1903), 30 Ind. App. 637; *Clinton School Tp. v. Lebanon Nat. Bank* (1897), 18 Ind. App. 42.

In the case of *Wrought Iron Bridge Co. v. Board, etc., supra,* the board of commissioners of two counties contracted for the construction of a bridge over a stream dividing the two counties. A contract was let, the bridge constructed and accepted, but it was held that the appellant could not recover, because the two boards had not complied with the provisions of the statute in letting the contract. In that case the court said: "The only authority the boards of the two counties had to construct a joint bridge is to be derived from the statute. * * * The conditions

458    APPELLATE COURT OF INDIANA.

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

therein enumerated must be performed before the exercise of this authority. If the statute prescribes the manner in which the power shall be exercised, and the method prescribed is disregarded, and a contract entered into, such contract is void. In the case at bar the contract was made in disregard of express provisions of the statute, and although the bridge may be worth the agreed price, and was accepted and used by the two counties, yet the contract being void could not afterwards be ratified and made binding."

That was a much stronger case for the appellant than the one now before us, for there an intended contract was actually made, and the work accepted. Here, no intended contract was made, and the revised books were not accepted. Statutory boards and officers must act within the scope of their authority and in obedience to the dictates of the statute under which they exercise authority, and when a statutory method is prescribed they have no discretion to say when the statute may be strictly complied with, and when it may not be followed. Such boards and officers can only discharge the full measure of their duties by doing that which the statute commands, and doing it in the manner prescribed.

In *Wrought Iron Bridge Co.* v. *Board, etc., supra,* this court said: "It will not do to say that in any given case the board may determine for itself whether it will follow the statute or disregard the statute and follow a method of its own, although the method adopted and carried out might produce equally as good results as that provided by statute."

In *Driftwood Valley Turnpike Co.* v. *Board, etc.* (1880), 72 Ind. 226, in speaking of a duty of boards of county commissioners as prescribed by the statute, the court said: "The mode in which the county is bound to perform that duty is specially pointed out by statute, and a contract which contravenes that mode, and substitutes another, must be void."

A township trustee is a statutory officer, and it has many times been held that he can bind the township only when he does what the statute authorizes, and does it in the manner prescribed. If he exceed his authority he can not bind his township by estoppel or otherwise. *Clinton School Tp.* v. *Lebanon Nat. Bank, supra,* and authorities there cited.

In *First Nat. Bank* v. *Adams School Tp.* (1897), 17 Ind. App. 375, it was said: "A school trustee, like the board of county commissioners, whose duties are defined and circumscribed by statute, can not do any act which is not either expressly or impliedly authorized by statute." See, also, *Board, etc.,* v. *Fertich* (1897), 18 Ind. App. 1; *Snoddy* v. *Wabash School Tp.* (1897), 17 Ind. App. 284; *Board, etc.,* v. *Allman* (1895), 142 Ind. 573, 39 L. R. A. 58; *Gavin* v. *Board, etc.* (1885), 104 Ind. 201.

10. The statute under consideration grants a new power and confers new and additional authority upon the board of school book commissioners, and prescribes the manner and conditions upon which that authority may be exercised, and in such case it can not lawfully be exercised in any other way. Sutherland, Stat. Constr., §454; *Head & Amory* v. *Providence Ins. Co.* (1804), 2 Cranch 127, 2 L. Ed. 229; *Best* v. *Gholson* (1878), 89 Ill. 465; *Franklin Glass Co.* v. *White* (1817), 14 Mass. 286.

11. This statute, passed in the interest of the public, will be regarded as mandatory, and mandatory statutes must be strictly pursued. Compliance with the conditions of such statutes is a condition precedent, and this means that the validity of acts done under a mandatory statute depends upon a compliance with its requirements. An eminent text-writer, discussing the subject, says: "When a statute is passed authorizing a proceeding which was not allowed by the general law before, and directing the mode in which the act shall be done, the mode pointed out must be strictly pursued. It is the condition on which alone a party can entitle himself to the benefit of the statute, that

its directions shall be strictly complied with. Otherwise the steps taken will be void. * * * Enabling statutes, on the principle of *expressio unius est exclusio alterius,* impliedly prohibit any other than the statutory mode of doing the acts which they authorize." Sutherland, Stat. Constr., §454. This proposition is sustained by many cases, cited by the author, and is well grounded in reason. Where statutory officers act without a compliance with the precedent conditions imposed, they exceed their powers and act without authority. *City of Madison* v. *Smith* (1882), 83 Ind. 502. The disobedience of a public officer, as stated by Judge Elliott in *Platter* v. *Board, etc.* (1885), 103 Ind. 360, "creates an incurable difficulty."

In the case of *Board, etc.,* v. *Gillies* (1894), 138 Ind. 667, appellant undertook to let a contract for county printing. It was contended that it did not comply with the provisions of the law conferring upon it authority to make such a contract. It was disclosed by the special finding of facts that it let the contract without complying with the law, and it was held that the contract could not be enforced, and in the decision the court said: "The third proposition advanced by counsel is, that the statute is directory and not mandatory, and that the intent and policy of the act have not been violated. If the position here taken were tenable it would amount to a total abrogation of the law in question. The statute requires that statements should be filed with the board by the several county officers, showing the supplies needed. The court finds that no such statements were filed, and that none were requested by the board. The statute requires, further, that ten days' notice should be given bidders for supplies. The court finds that no notice was given. The statute also requires that bids should be received for supplies. The court finds that the appellee's bid and that of Burford & Co. were not received or examined by the board. The statements by the officers, the notice to bidders, and the reception and examination of

the bids, are the essence of the law. If these are disregarded as being merely directory, the statute disappears. The statutes of the State are not to be wiped out in that manner. Boards' of county commissioners are themselves but the creatures of the legislature, and they must pursue and exercise their powers in strict compliance with the letter and spirit of the statute. It is theirs to obey, not to disregard, the commands of the lawmaking power of the State."

12. Appellant's learned counsel makes the following admissions in his brief: "That the state board of school book commissioners possesses only such powers to make contracts as are expressly given it by the statute; that its contracts, to be valid and binding, must be made in the manner prescribed by the statute; that persons contracting with it are bound to take notice of the statute, and of its limitations upon the power of the board; that a contract made in violation of the statute, or that is not made in substantial compliance with its requirements, is *ultra vires* and void; and that the board can not be estopped to question the validity of an *ultra vires* contract." He seeks, however, to parry the force and effect of such admission by asserting and arguing with much force and ability that the facts stated in the complaint "show a complete and valid contract, made in exact and strict conformity with the statute; a contract that was complete in all of its terms when the board, having entered upon its record its order for a revision, * * * received, accepted and spread upon its records the written consent of the contractors to the revision; the remaining terms of the contract being found in the statute itself, which, by its own force, entered into and became an essential part of the contract." With this assertion we can not agree, and the principles and propositions of law we have had under consideration, which are so firmly established, and so abundantly and well fortified by the authorities, lead us to the conclusion that no valid

and binding contract was made between appellant and appellees for a revision of the books which appellant had furnished under its former contract. Upon this branch of the case we do not deem it necessary or profitable to pursue the inquiry further.

13.    This leaves for consideration the only remaining question discussed by counsel, and that is the question of estoppel. We do not think the doctrine of estoppel, under the facts pleaded, is applicable here. Appellant dealt with appellees at arm's length. There was no inequality between them. Appellant was bound to know the law, and hence knew the scope and bounds of the authority of the board. It knew the board's powers, and the duties and obligations laid upon it by the statute, and was bound to know that it could act only within and according to the prescribed limits of the statute. Appellant was dealing with a statutory board, clothed only with statutory power, and it was bound to take notice of the scope and extent of authority conferred upon such board. *Baldwin* v. *Shill* (1892), 3 Ind. App. 291, 297; *Wrought Iron Bridge Co.* v. *Board, etc.* (1898), 19 Ind. App. 672; *Julian* v. *State* (1890), 122 Ind. 68; *Honey Creek School Tp.* v. *Barnes* (1889), 119 Ind. 213; *Platter* v. *Board, etc.* (1885), 103 Ind. 360, 381; 1 Dillon, Mun. Corp. (4th ed.), §447. The general rule, as stated by Mr. Bigelow, is that "clearly the state can not be estopped by unauthorized acts of its officers." Bigelow, Estoppel (5th ed.), 341.

The supreme court of Alabama, in the case of *State, ex rel.* v. *Brewer* (1879), 64 Ala. 287, says: "Estoppels against the state can not be favored. They may arise from its express grants *(Magee* v. *Hallett* [1853], 22 Ala. 699); but can not arise from laches of its officers; not on the notion of extraordinary prerogative, but upon a great public policy—*United States* v. *Kirkpatrick* [1824], 9 Wheat. 720 [6 L. Ed. 199]. All who deal with the officer or

agent of the government, must inquire at their peril into the extent of his power."

In *Platter* v. *Board, etc., supra,* the board of commissioners made an order authorizing the sale of the county infirmary. In the advertisement of the sale the county auditor did not state the minimum price which it was the duty of the board to fix on the property, nor the kind of security which the purchaser was required to give. Such proceedings were had as that the land was sold to appellant, the money paid and accepted, and a deed made. On appeal by the taxpayers, it was held that the sale was void, because the mode prescribed by statute was not followed. Appellant invoked the doctrine of estoppel, and in passing upon this branch of the case the Supreme Court said: "The appellant can not successfully build upon the doctrine of estoppel. For this conclusion there are at least two satisfactory reasons: First. He dealt with public officers with limited, naked statutory powers; he was bound, at his peril, to ascertain the scope of their authority, and can not found any claim upon acts done by those officers in excess of their statutory authority. This general rule is thus stated by the Supreme Court of the United States: 'Individuals as well as courts must take notice of the extent of authority conferred by law upon a person acting in an official capacity.' The rule is well established by our own decisions. *Union School Tp.* v. *First Nat. Bank* [1885], 102 Ind. 464; *Reeve School Tp.* v. *Dodson* [1885], 98 Ind. 497; *Axt* v. *Jackson School Tp.* [1883], 90 Ind. 101; *Pine Civil Tp.* v. *Huber Mfg. Co.* [1882], 83 Ind. 121. * * * There is a well-defined distinction between public and private corporations, and the general doctrine of estoppel does not apply to the former class of corporations. *Union School Tp.* v. *First Nat. Bank, supra; Cummins* v. *City of Seymour* [1881], 79 Ind. 491 [41 Am. Rep. 618]; *Driftwood Valley Turnpike Co.* v. *Board, etc.* [1880], 72 Ind. 226."

In *Rissing* v. *City of Ft. Wayne* (1893), 137 Ind. 427,

464    APPELLATE COURT OF INDIANA,

Silver, Burdett & Co. *v.* Indiana State Board, etc.—35 Ind. App. 438.

the Supreme Court quoted with approval the language used and rule declared in *Platter* v. *Board, etc., supra.* To the same effect, also, are the following: *Union School Tp.* v. *First Nat. Bank, supra; Axt* v. *Jackson School Tp., supra.*

14. But upon another ground the doctrine of estoppel is not applicable to the facts pleaded, and that is: "To constitute a valid estoppel by conduct, there must be knowledge on the part of the party sought to be estopped, and want of knowledge on the part of the party relying upon an estoppel." *Greensburgh, etc., Turnpike Co.* v. *Sidener* (1872), 40 Ind. 424. In this case, as was said in *Platter* v. *Board, etc., supra,* there was neither concealment nor misrepresentation, nor was there knowledge on the one side and ignorance on the other. There is therefore an entire absence of these elements of estoppel. In *Leonard* v. *American Ins. Co.* (1884), 97 Ind. 299, it was said: "It is well settled that where both parties to a transaction have equal knowledge, or means of knowledge, of all the facts, there can be no valid estoppel." Under the authorities and upon principle, appellant is not in a position to invoke the equitable doctrine of estoppel.

Counsel for appellant urges that his client has expended large sums of money in carrying forward and completing the revision in compliance with the directions of appellees, and in fulfilment of what it asserts was a valid contract, and that it has no other redress except in the enforcement of such contract. Appellant's expenditure of money in that regard, with a knowledge of the facts and the law, with which it was chargeable, was at its own risk, and for which it has no remedy.

15. If, as counsel for appellant says, the resolution of the board to revise the books, and appellant's consent thereto, constituted a binding contract, into which the law entered as an essential part, it was incumbent upon appellant to show by its complaint that it had fully complied with all the terms of the contract, including those which

its counsel says were injected into it by the law. The primary law by which the rights of the parties must be determined is the statute alone, under which the board was authorized to contract for a revision. That statute specifically prescribes the "manner" and "conditions" under which such revision may be made, and the complaint is silent as to whether the "manner" and "conditions" prescribed by statute were complied with. There is no averment that the subject-matter of the books revised was "to the acceptance and satisfaction of such board," nor that the manuscript was furnished "to the acceptance and satisfaction of such board," and the statute requires this. Neither is there any averment that the revised books were "equal in every respect to the standards now fixed by law as to subject-matter, material, style of binding and mechanical execution," and this the statute also requires. Acts 1893, p. 165, §14, §5895 Burns 1901. Neither is it shown that the board required "the contractor  *  *  *  to enter into a written agreement for the furnishing of such books, and to execute a bond  *  *  *  for the faithful compliance with" its contract.

16. It is evident from this last quotation from the statute that the legislature did not anticipate or intend that the expressed determination of the board to revise certain books, and the written consent of the publishers thereto, should constitute a binding contract, for it went further and provided that after that the parties should make a contract, and defined the conditions that should enter into the contract. *Mann* v. *Town of Rochester* (1902), 29 Ind. App. 12.

There are other conditions made by the statute, to which we have already adverted, and which the complaint fails to show were complied with. No facts are alleged from which it can be reasonably deduced that it was the duty of the board to accept and approve the revised books.

17. Appellant's contention that a determination of the

board that a revision should be made, and the written consent of appellant thereto, constituted a contract from which the State might not be released even though the work of revision should not prove acceptable, is not consistent with the plain provisions of the statute, nor supported by reason or logic. Such a construction of what appellant's counsel contends constitutes the contract would defeat the plain intent of the law, and be subversive of the best interests of the public schools.

Counsel takes the position that, after determining to have the books revised, the board was bound to continue the revision, if not at first satisfactory, and so continue *ad infinitum*. This would destroy the plain purpose and intent of the statute, and place upon the public schools the burden of using books which the board had, in its judgment, said should not be used because of obvious defects. The legislature in enacting the statute we have had under consideration had for its primary object the betterment of the public schools, and it will not do to say that the board which the statute created, in carrying out its provisions, and persons dealing with it, can disregard its provisions, and still bind the State. Such a doctrine would nullify the statute, and destroy the healthful purpose it was intended to serve.

These considerations lead us to the conclusion that appellant's complaint does not state a cause of action, and that the demurrer to it was correctly sustained. Judgment affirmed.

Comstock, C. J., Robinson, P. J., Myers and Black, JJ., concur; Roby, J., concurs in result.